IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION
FILED
October 24, 2005
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| **JOHN ALDRIDGE,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil No. 7:05-CV-00056-R |
| **SECRETARY, DEPARTMENT OF** | § | |
| **THE AIR FORCE** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is the Motion to Dismiss filed by Defendant Michael Dominguez, Acting Secretary, Department of the Air Force (filed May 3, 2005) and Plaintiff John Aldridge's Response (filed May 20, 2005). After a thorough review of all parties' submissions, all matters of record, and all applicable law, Defendant's Motion to Dismiss is **GRANTED**.

### I. BACKGROUND

On December 20, 2001, Plaintiff filed an original complaint in this court, Cause No. 7:01-CV-0252, alleging medical malpractice on the part of Air Force physicians at Sheppards Air Force Base. Specifically, he claimed that the Air Force physicians violated their standard of care when they prescribed the sleeping drug Halcion to the Plaintiff from 1986 to 1988.[1]

---

[1] Plaintiff has filed multiple lawsuits against Defendant (four of which, Cause No. 7:05-CV-265, Cause No. 7:05-CV-065, Cause No. 7:04-CV-0098, Cause No. 7:01-CV-0252, and Cause No. 7:04-CV-0001, were consolidated into Cause No. 7:01-CV-0252). In light of this, for convenience this Court will hereinafter refer to the original December 20, 2001claim, Cause No. 7:01-CV-0252, as "*Aldridge I.*"

Eventually Plaintiff voluntarily dismissed the original suit.

During the course of the protracted discovery disputes in *Aldridge I*, Defendant made multiple requests pursuant to the Freedom of Information Act (FOIA).  Defendant alleges that on April 21, 2004, he received a response to one of his FOIA requests that included a letter (dated January 10, 2002) from Air Force counsel to the Assistant United States Attorney (AUSA) assigned to defend the lawsuit.  (*See* Compl. ¶2).  The letter reflected that Air Force counsel had disclosed Plaintiff's medical records to the AUSA.  Defendant alleges in his Response that the transmitted medical records pertained to personal health matters other than the subject matter of the litigation, the prescription of Halcion.  (*See* Pl.'s Resp. at 4).

On March 1, 2005, Plaintiff filed the present complaint *pro se* under the Federal Torts Claim Act (FTCA), asserting that this broad disclosure without his consent violated his right to privacy.  Defendant filed its Motion to Dismiss on May 3, 2005.

## II. ANALYSIS

A.      **Standard for 12(B)(6) Motion**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Such dismissals are rare, *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986), and should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief."  *Conley v. Gibson*, 255 U.S. 41, 45-46 (1957);  *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994) ("[A] claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would

entitle him to relief."). In other words, a Rule 12(b)6 dismissal is not warranted merely because the court "believes the plaintiff is unlikely to prevail on the merits." *Clark*, 794 F.2d at 970. "Even if it seems 'almost a certainty. . . that the facts alleged cannot be proved to support the legal claim,' the claim may not be dismissed so long as the complaint states a claim." *Id.* (quoting *Boudelouche v. Grow Chem. Coatings Corp.*, 728 F.2d 759, 762 (5th Cir. 1984)).

In considering Defendant's motion, this Court must liberally construe the complaint in favor of the plaintiff, accept all well-pleaded facts as true, and view all facts in the light most favorable to the plaintiff. *See Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied,* 459 U.S. 1105 (1983). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

**B. FTCA Claim**

Plaintiff makes his claim under the FTCA, 28 U.S.C. §§ 1346, 2671-2680. (See Complaint ¶3). The FTCA "gives federal district courts jurisdiction over claims against the United States for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' " 28 U.S.C. § 1346(b); *Sheridan v. United States*, 487 U.S. 392, 398 (1988).

To be actionable, Plaintiff's claims must comply with all terms of the FTCA. The Court

will therefore determine whether Plaintiff has alleged sufficient facts to meet the requirements of an FTCA claim, while accepting all well-pleaded facts as true. *See Campbell*, 43 F.3d at 975.[2]

The FTCA essentially waives the federal government's sovereign immunity for torts committed by government agents. *Johnston v. United States*, 85 F.3d 217, 218 (5th Cir. 1996). Waiver, however, is subject to a number of jurisdictional prerequisites. First is the exhaustion of administrative remedies. *See* 28 U.S.C. § 2675(a). The terms of 28 U.S.C. § 2675(a) provide in pertinent part that "[a]n action shall not be instituted upon a claim against the United States. . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." *Id.* Plaintiff properly alleges that he met this requirement by stating that he submitted his administrative claim in writing on June 23, 2004 to the Department of the Air Force, and that he received a final denial from the agency a few months later on September 9, 2004. (*See* Compl. ¶3).

Second, a claimant must meet a two-year statute of limitations requirement under the FTCA. "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues. . ." 28 U.S.C. § 2401(b). A claimant must file suit within six months of the denial of a claim. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001). Plaintiff alleges that he has not tolled the statute of limitations for an FTCA claim, and that he filed a timely suit after the denial

---

[2] The Court gives notice to the fact that Plaintiff is *pro se*, and therefore treats him with due leniency while liberally construing his pleadings. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam) (noting the "traditional disposition of leniency toward *pro se* litigants").

of his administrative claim. He references the accrual[3] of his FTCA claim on April 21, 2004, when he received the telling FOIA response referenced above, and his submission of the claim to the appropriate federal agency on June 23, 2004, less than two years later. (*See* Complaint ¶3). Plaintiff filed his Complaint on March 1, 2005, less than six months after he allegedly received his September 9, 2004 final denial for the Department of the Air Force. (*See* Complaint ¶3). Thus, Plaintiff's alleges sufficient facts to meet the statute of limitations requirement.

Although Plaintiff meets the exhaustion and statute of limitations prerequisites, the only appropriate defendant in a suit brought under the FTCA is the United States - all other defendants must be dismissed for lack of jurisdiction. *Carlson v. Green*, 446 U.S. 14, 20 (1980); *Atorie Air, Inc. v. F.A.A.*, 942 F.2d 954, 957 (5th Cir. 1991); *see generally* 28 U.S.C. § 2679(b), (d). So regardless, Plaintiff's claim fails for lack of jurisdiction under the FTCA.

In order to avoid affording Plaintiff false hope in a meritorious claim filed against a different defendant,[4] however, this Court will analyze Plaintiff's claim as if there were proper jurisdiction in this case. Defendant argues in his Motion that Plaintiff has failed to state a claim under the FTCA upon which relief can be granted. (*See* Def.'s Mot. at 7). The substantive law of the State of Texas controls an adjudication of the United State's tort liability in this case. *United States v. Muniz*, 374 U.S. 150 (1963). In other words, Plaintiff must show that Defendant breached a duty of care established by Texas state law.

---

[3] An FTCA action may accrue "when the claimant discovered. . . the existence of the acts upon which his claim is based." *Dubose v. Kansas City Southern Railway Co.*, 729 F.2d 1026, 1029 (5th Cir. 1984) (quoting *Quinton v. United States*, 304 F.2d 234 (5th Cir. 1962))

[4] The Court also acts in the interest of judicial efficiency, given the Plaintiff's exceptionally litigious history.

Plaintiff states that the Air Force's unauthorized transmittal of his medical records to its attorney, the AUSA, was a "violation of [his] right to observance of strict privacy and confidentiality of medical records." (Compl. ¶2) This suggests, and Defendant accepts, that the two state claims for relief that might be construed from Plaintiff's Complaint are: (1) a violation of Plaintiff's right to privacy and (2) a breach of the physician-patient privilege. (*See* Def.'s Mot. at 3-6). The Court will therefore analyze these two claims under the Rule 12(b)(6) standard set forth above.

**1. Right to Privacy**

Plaintiff claims that the Defendant's disclosure of his medical records to the AUSA in the face of his medical malpractice lawsuit violated his right to privacy. (*See* Comp. ¶ 2). Texas recognizes three distinct injuries under the tort of invasion of privacy: (1) intrusion on seclusion, (2) public disclosure of private facts, and (3) appropriation of name or likeness. *See Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex.1994). Only the first two are implicated by these facts, and the Court will consider each in turn.

To prevail on a cause of action for invasion of privacy by intrusion on seclusion, Plaintiff would have to show three elements: (1) an intentional intrusion on the Plaintiff's solitude, seclusion, or private affairs (2) that would be highly offensive to a reasonable person and (3) resulted in an injury to the Plaintiff. *See Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993) (showing elements (1)-(2)); *K-Mart Corp v. Trotti*, 677 S.W.2d 632, 638 (Tex.App. – Houston [1st Dist.] 1984, *writ ref'd n.r.e.*, 686 S.W.2d 593 (Tex.1985) (showing element (3)).

In the present case Plaintiff alleges that the disclosure of medical records without consent is an actual intrusion into his privacy. (*See* Pl.'s Resp. at 4). His allegation, however,

does not support a cause of action for intrusion on seclusion. The act of disclosure simply is not comparable to acts of what one Texas court coined as "quasi-trespass." *Doe v. United States*, 83 F.Supp.2d 833, 840 (S.D. Tex.2000). Past acts that have qualified as an intrusion include spying, opening private mail, wiretapping, entering a person's residence. *Doe*, 83 F.Supp. at 840 (citing *Billings v. Atkinson*, 489 S.W.2d 858, 860 (Tex.1973)); *Gonzalez v. Southwestern Bell Telephone Co.*, 555 S.W.2d 219, 220, 222 (Tex.Civ.App.–Corpus Christi 1977); *Black v. Sheraton Corp. of America*, 564 F.2d 531, 541 (D.C. Cir. 1977). Other actionable invasions include videotaping a bedroom without permission, *see Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex.App. – Texarkana 2001, *pet. denied*); entering a home without permission, *see Gonzalez*, 555 S.W.2d at 222; searching a personal locker or purse, *see Trotti*, 677 S.W.2d at 637; and spying and harassment, *see Kramer v. Downey*, 680 S.W.2d 524, 525 (Tex. App.–Dallas 1984, *writ ref.'d n.r.e.*). Although past cases show that an intrusion need not be physical, *see, e.g.*, *Valenzuela*, 853 S.W.2d at 513, disclosure of information to a third party does not qualify as an act of intrusion in and of itself. Thus, Plaintiff does not allege an action that would meet the first element of this state claim.

Nor would a reasonable person find the disclosure of medical records offensive within this context. Plaintiff does not allege how this disclosure would be highly offensive to a reasonable person. *See Valenzuela*, 853 S.W.2d at 513; *see also Trotti*, 677 S.W.2d at 636 (stating that the intrusion must be substantial enough that an ordinary person would feel severely humiliated or outraged). Here, the Department of the Air Force did not hand over Plaintiff's medical records to the AUSA "just 'cuz," as Plaintiff claims. (*See* Pl.'s Resp. At 3). In *Aldridge I*, Plaintiff sued for medical malpractice. It is therefore not unreasonable or

unwarranted that the Department of the Air Force would turn over Aldridge's medical records to the AUSA for the legitimate purpose of investigating and defending against the legal action.[5] In fact, as discussed later here, the Texas Rules of Evidence, which specifically acknowledge various statutory protections for confidential information, provide an exception to the use of confidential medical records in a civil proceeding "when the proceedings are brought by the patient against a physician, including but not limited to malpractice proceedings. . ." TEX. R. EVID. § 509(e)(1). Although Plaintiff claims that his medical records were not "handled with proper respect," he makes no specific allegations as to why this was the case, (*see* Pl.'s Resp. At 3). There is no allegation that the records were disclosed to a nonparty, that they were mishandled or used for some unlawful purpose, or publicized in any way. Plaintiff does not even dispute Defendant's contention that the records were transported in a confidential manner to the AUSA. (*See* Resp. at 4-5). .

As Plaintiff fails to allege facts sufficient to meet the first two elements of this claim, there is no recognizable claim for invasion of seclusion. Whether he can show sufficient facts to prove an injury suffered by the disclosure is irrelevant. The Court will instead proceed to a claim for public disclosure of facts, the only other possible cause of action under invasion of privacy in Texas.

To prevail on a cause of action for invasion of privacy by public disclosure of facts, Plaintiff must show (1) that the publicized information "contains highly intimate or embarrassing facts about a person's private affairs," (2) that such information was

---

[5] That is, it is not unreasonable or unwarranted unless this Court would find that Plaintiff "[could] eat [his] cake and have it, too." E.D. HIRSCH ET AL., THE NEW DICTIONARY OF CULTURAL LITERACY 58 (Houghton Mifflin Co. 2002).

communicated to "more than a small group of persons," or, put another way, that it was disclosed to the "public at large," and (3) "that the information publicized was not of legitimate concern to the public." *Johnson v. Sawyer*, 47 F.3d 716, 731 (5th Cir. 1995) (quoting *Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 683-84 (Tex.1976)). Although private medical records are certainly of an intimate nature that are generally not of concern to the public, Plaintiff alleges no publicity to the "public at large" in this case.[6] Thus, he does not plead sufficient facts to meet the requirements of a public disclosure claim.

## 2. Physician-Patient Privilege

Plaintiff claims that the Defendant's disclosure of his medical records to the AUSA violated a physician-patient privilege of confidentiality. (*See* Comp. ¶ 2). There is a physician-patient privilege for civil proceedings under Texas law. TEX. R. EVID. § 509 (stating, in relevant part, that "confidential communications between a physician and patient. . . in connection with any services rendered. . . are privileged and may not be disclosed."); *McGowan v. O'Neill*, 750 S.W.2d 884, 886 (Tex.App.–Houston [14th Dist.] 1988, *no writ*). Plaintiff does not waive this right merely because he filed suit, although there are a number of exception to this rule. One of these exceptions is when proceedings are "brought by a patient against a physician, including but not limited to medical malpractice proceedings." TEX. R. EVID. § 509(e).

Notwithstanding the facts that Plaintiff admits that he himself turned over his civilian

---

[6] Although Plaintiff suggests the possibility of "inquisitive janitors" having access to his medical records once they were in the possession of the AUSA, (*see* Pl.'s Resp. At 3), Plaintiff does not allege that actual access occurred, or that said access was the result of publication on the part of the Department of the Air Force or the Assistant United States Attorney Office (AUSAO) for that matter.

**MEMORANDUM OPINION AND ORDER – PAGE 9**

medical records to the AUSA, (*see* Pl.'s Resp. at 4), and that the physician-patient privilege in Texas is generally applied to discovery by the opposing party, *see, e.g., R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex.1994), Plaintiff waived privilege to his medical records when he filed a medical malpractice suit against the Air Force.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is hereby **GRANTED**.

    It is so ORDERED.
    ENTERED: October 24, 2005.

                                                _____
                                                JERRY BUCHMEYER,
                                                SENIOR U.S. DISTRICT JUDGE
                                                NORTHERN DISTRICT OF TEXAS